IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BERTHA A. HARRELL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 08-0366-CV-W-ODS ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

<u>ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION DENYING
DISABILITY INSURANCE BENEFITS AND REMANDING FOR RECONSIDERATION</u>

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under the Social Security Act. The Commissioner's decision is not supported by substantial evidence on the record as a whole, so the final decision is reversed. The case is remanded to the Commissioner for further proceedings consistent with this opinion.

This is Plaintiff's second application for benefits; the first was denied on February 25, 2002, so she must demonstrate she became disabled on or after that date in order to obtain benefits. Likewise, Plaintiff's insured status under Title II expired on June 30, 2006, so she must establish that she was disabled before that date. This is also Plaintiff's second appeal to this Court. The ALJ entered his first decision finding that Plaintiff was not disabled on August 26, 2004. The genesis of Plaintiff's claim arose from nerve release surgery performed in January 2001 to address compression of the ulnar nerve in her right arm. Following surgery, Plaintiff continued to complain of pain, weakness, swelling, tingling, and numbness in her right arm. At Plaintiff's fist hearing before the ALJ, a Medical Expert ("M.E.") testified based on his review of the medical records and Plaintiff's statements and testimony that Plaintiff suffers from reflex sympathetic dystrophy ("RSD"). He explained this condition matched all of Plaintiff's symptoms, including the tingling, numbness, and color changes in her right arm, and the

beginning of symptoms in her left arm. In describing Plaintiff's functional abilities, the M.E. testified as follows:

> [C]ontinuous work of any sort is going to be very difficult for her to do. In terms of standard RFC, this lady can, using the left hand, at least at this point, I think can lift 20 [pounds occasionally] and 10 [pounds regularly]. I think she can stand six [hours out of an eight hour day] and sit six [hours out of an eight hour day]. I think that her use of the right arm is essentially limited to rare use and gross use, because repetitive movement of the hand will become very painful and she simply can't do that. She needs to avoid extremes of heat, cold and vibration. And she can't do overhead reaching with that right arm. The degree that pain limits her in addition to that – I know it does, but I don't know how to quantitate that – it's difficult, primarily because the physician progress notes do not give her any credibility at all, and have tended to minimize this problem which I think is a real problem. But there is no question that pain is a further limitation besides what I've given in the RFC.

R. 33-34. Later, in response to a question from Plaintiff's counsel, the M.E. testified "it is entirely possible for people with this illness to have pain that's a total distraction and make them unable to accomplish sustained performance." R. 37.

In his first decision, the ALJ found Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently using her left hand. He also found Plaintiff unable to stand continuously due to a knee condition. The ALJ concluded that these limitations precluded Plaintiff from returning to her past work, but the ALJ found Plaintiff could perform other work in the national economy. He discounted all of Plaintiff's subjective complaints by pointing to medical records that suggested symptom magnification and lack of effort during testing. On November 27, 2006, this Court remanded the case for reconsideration, instructing the Commissioner to further develop the record by arranging for a formal diagnosis of Plaintiff, specifically considering RSD as a possible cause of Plaintiff's symptoms. The ALJ was directed to reassess Plaintiff's credibility in light of the new medical findings.

On January 17, 2008, following a supplemental hearing, the ALJ again found that Plaintiff was not under a disability at any time when she met the earnings requirements of the law. This time, while the ALJ found that Plaintiff had the severe impairments of

2

pain and swelling in the hands, wrists, and elbows, status post cubital tunnel release, he found she had the RFC to "perform work of light exertion in that she is able to lift and/or carry 20 pounds occasionally, a nominal amount frequently, stand, walk, and/or sit for six hours of an eight hour workday." R. 309. He did not find that Plaintiff had any restrictions in her ability to handle, finger, or manipulate with her hands, and therefore concluded that Plaintiff was able to perform her past work as an invoice clerk, in which she used her right hand constantly on the 10-key.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

The ALJ reached his conclusion by discounting the opinions of Plaintiff's treating physicians. In 2001, following Plaintiff's surgery after which she continued to complain of pain, John B. Moore, M.D., found that testing was positive for symptom magnification, however, he also found that Plaintiff should be restricted from repetitive motion in the fingers or wrist, sustained forceful gripping, and 10-key operation. R. 237. Additionally, a Medical Source Statement completed by another treating physician, Patrick Nemechek, D.O., states that Plaintiff was not able to lift, carry, or use her bilateral upper extremities at all. R. 435-39. While Dr. Nemechek treated Plaintiff primarily for cardiac related complaints, his treatment notes do reflect her complaints of upper and lower extremity pain and Dr. Nemechek's assessment of arthragia with synovitis. R. 426-430.

The ALJ also discounted the opinion of Kala Danushkodi, M.D., who performed a
3
Case 4:08-cv-00366-ODS   Document 10   Filed 04/06/09   Page 3 of 5

consultative examination of the Plaintiff on June 19, 2007. While the examination revealed some symptom magnification and no significant objective deficit, Dr. Danushkodi opined that Plaintiff should be restricted from repetitive hand activities, including fingering, keyboarding, lifting, and carrying and handling objects due to risk for entrapment neuropathies and tendonitis. She also estimated that Plaintiff could lift only 5 to 10 pounds occasionally. R. 372.

Conversely, the ALJ gave controlling weight to the non-treating, non-examining medical expert that testified at Plaintiff's second hearing. After reviewing the medical evidence, Dr. Hershel Goren testified that he agreed with the findings of Plaintiff's doctors but not their conclusions and restrictions. Specifically, he found it was inconsistent for doctors to note some symptom magnification by Plaintiff and yet find she had some restrictions and limitations in her ability to use her hands. Dr. Goren opined that Plaintiff had no restrictions with regard to her hands. He also opined that Plaintiff's symptoms were inconsistent with RSD, as found by the prior M.E. However, he also stated it would be "inappropriate" for any physician, including him, to disagree with Plaintiff's allegations of pain. R. 505. He stated that he was not denying the presence of Plaintiff's pain, but was denying that Plaintiff was limited in any way based on those complaints. R. 506. The ALJ later asked for Dr. Goren's opinion as to Plaintiff's RFC, to which Dr. Goren stated, "[t]here would be no restrictions. The residual functional capacity is no restrictions. There would be no exertional restrictions, no mental - - no manipulative restrictions, no mental restrictions." R. 507.

It is unsurprising that Dr. Goren agreed with the findings of Plaintiff's doctors, since he had no basis for formulating different findings. Yet, he stands alone among those who have examined or opined concerning Plaintiff's condition when he boldly concludes she has no restrictions. His testimony that he was not denying Plaintiff was in pain, just that she was in any way limited by her pain is a remarkable conclusion. Pain does not limit movement? Of course it does, and one does not need a medical education to know it is so. The Court finds the testimony of Dr. Goren to be inconsistent with the evidence in the record as a whole, biased toward the Commissioner, and unworthy of acceptance.

4

Without the testimony of Dr. Goren, the ALJ's RFC determination is not supported by substantial evidence on the record. Further, the ALJ completely discounts all of the limitations regarding Plaintiff's ability to use her hands, as found by her physicians, yet, without explanation, finds Plaintiff somewhat limited in her ability to lift and carry, and stand, walk and/or sit. The ALJ's subsequent conclusion that Plaintiff can perform her past work requiring constant use of the 10-key, is contrary to all medical evidence except the testimony of Dr. Goren.

The Commissioner's final decision is therefore reversed, and the case is remanded for further proceedings consistent with this Order. The Court suggests that the ALJ consider whether he should preside over a third hearing or whether another ALJ might more appropriately preside over this remand. Additionally, the Court suggests that a different medical expert be utilized for the next hearing, preferably one who has examined the Plaintiff and is qualified to offer independent opinions concerning her condition. On remand, the ALJ shall:

1. Arrange for an additional, thorough examination of Plaintiff, that
2. specifically considers RSD as a possible cause of Plaintiff's symptoms, and
3. develop a new RFC based on all the evidence in the record.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: April 6, 2009          UNITED STATES DISTRICT COURT